UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ASHANTI R. GUY,

                Petitioner,

v.

RANDEE REWERTS,

                Respondent.

Case No. 1:21-cv-485

Honorable Paul L. Maloney

_____/

### OPINION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Ashanti R. Guy is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On April 23, 2018, following a five-day jury trial, a Calhoun County Circuit Court jury found Petitioner guilty of four counts of first-degree criminal sexual conduct (CSC-I)—two counts based on Petitioner's relationship with the victim and two counts based on the victim's age at the time of the penetrations—in violation of Mich. Comp. Laws § 750.520b, and one count of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d. On June 4, 2018, the court sentenced Petitioner to concurrent prison terms of 25 to 50 years for the CSC-I convictions based on the victim's age, 23 years, 9 months to 50 years for the CSC-I convictions based on Petitioner's relationship with the victim, and 10 to 15 years for the CSC-III conviction.

       On June 4, 2021, Petitioner filed his habeas corpus petition, raising four grounds for relief, as follows:

       I.      The [Petitioner] was denied a fair trial by the admission of evidence of unrelated domestic violence.

II.     The court of appeals should remand this case to the Calhoun County Circuit Court for a hearing to determine the reason for replacing a juror.

III.    The [Petitioner] was denied his constitutional right to effective assistance of counsel because his trial attorney failed to investigate records from the department of health and human services that would corroborate the [Petitioner's] assertion that Rashedia Pastor was paid for daycare services for Patricia Green[, the victim's mother,] until 2012.

IV.     The trial court erred in allowing the late endorsement of a witness, Janae Bosher.

(Pet., ECF No. 1-1, PageID.18.) Respondent asserts that Petitioner's grounds for relief are meritless.[1] (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.     Factual Allegations

The Michigan Court of Appeals described the facts and procedural history underlying Petitioner's convictions as follows:

For a period of five years, [Petitioner], who was an adult father figure to the victim, sexually assaulted her. [Petitioner] began living with the family of the victim when she was three years old. At trial, the victim testified to at least five instances of sexual assault. The first assault occurred in the victim's bedroom when she was 11 years old. After digitally penetrating the victim's vagina and performing cunnilingus, [Petitioner] engaged in penile-vaginal penetration. The victim's mother was not home and the victim obeyed [Petitioner] because she was afraid of

---

[1] Respondent also contends that a portion of Petitioner's first ground for relief, as well as his second ground for relief, are procedurally defaulted. (ECF No. 8, PageID.122–23.) The Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, the Court finds that judicial economy favors directly addressing the merits of Petitioner's claims.

him and his retaliation. The second incident occurred the next day or soon afterward. Following this assault, [Petitioner] had a well-established routine. [Petitioner] would tell the victim to get ready and she would go into her room and wait for him to assault her. Although the victim claimed that these incidents blurred together, she recalled that they occurred almost every holiday. The third incident occurred during the following Christmas. [Petitioner] warned the victim that she would not get what she wanted for Christmas if she did not do what he wanted, but, if she did, she would. Again, [Petitioner] engaged in digital penetration, cunnilingus, and penile penetration. The fourth incident occurred when the victim was approximately 14 years old. [Petitioner] took away the victim's phone and other privileges in order to coerce her into not resisting. Again, this occurred more than once and involved [Petitioner] engaged in penile penetration. The fifth incident occurred on November 12, 2015, when the victim was 16. This was the Thursday before [Petitioner] was arrested for domestic violence against the victim's mother. Again, [Petitioner] engaged in penile penetration.

The victim previously did not report these incidents because she was concerned that no one would believe her or that [Petitioner] would use his status as the household's father figure to punish or harm her. Sometimes, [Petitioner] would beat the victim if she hesitated and, other times, he would physically overpower and choke the victim while sexually assaulting her. The victim only told her best friend about [Petitioner's] sexual assaults. However, after [Petitioner] was arrested for domestic violence against the victim's mother, the victim felt both safe and compelled to inform her mother. This was because, during the argument that led to the domestic-violence incident, the victim overheard her mother and [Petitioner] quarreling about [Petitioner] having a sexually transmitted disease (STD). Because [Petitioner] had an STD, the victim felt that it was necessary that she be medically tested.

Eventually, [Petitioner] was charged with four counts of CSC-I and one count of CSC-III. On the morning of the first day of trial, the prosecution endorsed a new witness, the victim's best friend. [Petitioner] objected that there was no notice and that the prosecution had not listed the best friend as a prospective witness. The prosecution responded that investigators had only managed to contact the witness shortly before trial. The trial court allowed the prosecution to introduce the witness's testimony. [Petitioner] also made a statement on the record that his counsel was ineffective for failing to investigate and produce evidence that would allegedly show that the state had paid for daycare services for the victim's mother. Defense counsel explained that, even if such records existed, he did not believe that they were relevant.

During trial, the prosecution also called a number of other witnesses who testified about [Petitioner's] arrest, the subsequent investigation, and about the circumstances at the victim's home that repeatedly left [Petitioner] alone with victim. This included testimony about how the victim's mother was often not home because she worked. In contrast, [Petitioner] was home most of the time. Testing also confirmed that the victim had an STD. Because of the time between

[Petitioner's] last sexual assault and ultimate investigation, testing of the victim's rape kit revealed no DNA.

[Petitioner] testified in his own defense. [Petitioner] categorically denied the victim's allegations, but admitted to his arrest for domestic violence involving the victim's mother. [Petitioner] also admitted to being violent against the victim, but he claimed that he was a disciplinarian and that this discipline prompted the victim and her mother to lie about the sexual assaults. [Petitioner] worked odd jobs throughout the relevant timeframe and claimed he was not always home alone with the victim. [Petitioner] further testified about the daycare worker's schedule and when she was present in the home. [Petitioner] explained that people were almost always present in the home with him and the children. [Petitioner's] primary defense was that the victim and her mother decided to frame him for sexual assault after the last domestic-violence incident.

The jury deliberated for approximately four hours before it reported that it was deadlocked. The trial court instructed the jury to attempt to reach a verdict.

The following Monday, the trial court reconvened. The trial court reported that at the end of the previous court session, a juror submitted a note to the trial court stating . . . that the juror was unable to return to the jury on Monday morning. The trial court selected a new juror from the two alternate jurors with both counsel present. The trial court did not explain why the juror was unable to return. Two hours later, the jury returned a guilty verdict on all five charges.

*People v. Guy*, No. 344388, 2019 WL 6977837, at *1–2 (Mich. Ct. App. Dec. 19, 2019).

Jury selection began on April 17, 2018. (Trial Tr. I, ECF No. 9-4.) Over the course of five days, the jury heard testimony from numerous witnesses: the victim; law enforcement officers; an expert in emergency medicine; a sexual assault nurse examiner (SANE); an expert in child abuse, pediatrics, and characteristics of victims of sexual abuse; the victim's best friend; a forensic scientist; the victim's mother; and Petitioner. (Trial Tr. I, II, III, & IV, ECF Nos. 9-4, 9-5, 9-6, 9-7.) The jury reached a guilty verdict on April 23, 2018. (Trial Tr. V, ECF No. 9-8.) Petitioner appeared before the trial court for sentencing on June 4, 2018. (ECF No. 9-9.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals, raising the four grounds for relief set forth above. (Pet'r's Appeal Br., ECF No. 9-10, PageID.980.) The court of appeals affirmed Petitioner's convictions

4

and sentences on December 19, 2019. *Guy*, 2019 WL 6977837, at *1. On July 28, 2020, the

Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Guy*, 946

N.W.2d 270 (Mich. 2020). This § 2254 petition followed.

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions

are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685,

693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

(internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This

standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal

quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.

28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000);

*Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

law" does not include decisions of the Supreme Court announced after the last adjudication of the

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

6

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Ground I—Admission of Evidence of Unrelated Domestic Violence

As his first ground for relief, Petitioner contends that he was "denied a fair trial by the admission of evidence of unrelated domestic violence." (Pet., ECF No. 1-1, PageID.18.) Petitioner contends that this evidence "was exceptionally prejudicial yet had no real connection to the underlying facts" and that there "was little if any probative value in [Petitioner's] final domestic violence arrest as a reason for [the victim's] decision to disclose alleged sexual assaults to her mother." (*Id.*, PageID.37.) Essentially, Petitioner complains that the jurors were likely to be swayed to find him guilty of the charged crimes because of the evidence of domestic violence.

7

The court of appeals rejected Petitioner's argument, concluding that the evidence was properly admitted under the Michigan Rules of Evidence. *See Guy*, 2019 WL 6977837, at *2–4. The court specifically concluded that the evidence regarding domestic violence was relevant and not unfairly prejudicial:

> [Petitioner's] arrest for domestic violence served as the reporting trigger for this case. Because [Petitioner] was arrested, the victim felt both comfortable and compelled to report [Petitioner's] sexual assaults in order to seek testing for STDs. Although the arrest for domestic violence was not itself relevant to the elements of the charged crime, it was material to the victim's credibility. [*People v. ]Sabin (Aft Rem)*, 463 Mich. [43,] 57 [(2000)]. While the earlier incidents explained the victim's reluctance to disclose, [Petitioner's] arrest for domestic violence acted as the impetus for the victim's report. Thus, it was highly relevant to a material fact.
>
> [Petitioner] contends that the fact that he was previously arrested lessened the probative value of this evidence because the victim was capable of reporting [Petitioner's] sexual assault earlier. However, the probative value of the evidence of the specific arrest at issue was also rooted in the discovery that [Petitioner] may have an STD and the victim's subsequent need to report [Petitioner's] sexual assaults to obtain STD testing for herself. Again, this was highly probative to explain why the victim chose to come forward at that specific moment after five years of sexual assaults.
>
> [Petitioner] next asserts that the prejudicial impact of his arrest for domestic violence rendered this evidence inadmissible under MRE 403. Certainly, evidence of his domestic violence was prejudicial to [Petitioner]. However, when balanced against its highly probative value to explain the victim's decision to report at that specific moment, the evidence of the domestic violence was not unfairly prejudicial. See [*People v. ]Sharpe*, 502 Mich. [313,] 333 [(2018)] ("All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations."). Moreover, the trial court issued an appropriate instruction ordering the jury to not consider evidence that [Petitioner] previously committed a crime for the purposes of convicting in this case.

*Guy*, 2019 WL 6977837, at *3–4. The court of appeals further noted that even if the trial court had erred by admitting the testimony, Petitioner had failed to demonstrate that such error was harmful. *Id.* at *4.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Petitioner's presentation of this issue to the Michigan Court of Appeals—the

same presentation of the issue he makes in this Court—centers on his claim that the evidence was not properly admitted under the Michigan Rules of Evidence. (Pet'r's Br., ECF No. 1-1, PageID.34–37.) To the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. It may be that certain evidence might still render a trial unfair whether or not it is properly admitted under state law. A state court's ruling admitting or excluding evidence, however, "cannot rise to the level of due process violations unless [it] 'offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (second alteration in original) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

9

That latitude is increased further by the deferential standard of review under the AEDPA. This court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Petitioner has not met this high standard because he fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue. First, the Michigan Court of Appeals determined that the domestic violence evidence was directly relevant to the matters at issue in Petitioner's criminal prosecution because it was the victim's trigger to disclose the abuse. The Sixth Circuit Court of Appeals notes that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012).

Second, even absent that direct relevance, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "prior bad acts" evidence. *Estelle*, 502 U.S. at 67. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes

10

evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Because there is no clearly established federal law holding that evidence that is relevant violates due process simply because it is prejudicial and there is no clearly established federal law holding that "prior bad acts" evidence violates due process, Petitioner cannot demonstrate that the court of appeals' rejection of his claim concerning the admission of testimony regarding domestic violence is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground I.

### B.    Ground II—Replacement Juror

As his second ground for relief, Petitioner suggests the court of appeals should have remanded the case to the trial court "for a hearing to determine the reason for replacing a juror." (Pet., ECF No. 1-1, PageID.18.) According to Petitioner, one of the jurors was unable to return to continue deliberations on Monday, April 23, 2018. (*Id.*, PageID.37.) That juror submitted a note to the trial judge on Friday, April 20, 2018, and one of the two alternates was chosen to return. (*Id.*) Petitioner contends that he was not present "when the note was considered and the replacement juror selected." (*Id.*, PageID.38.)

The court of appeals first concluded that Petitioner had waived any objection to the replacement juror process because Petitioner's counsel indicated he had no objections. *Guy*, 2019 WL 6977837, at *4–5. The court of appeals also concluded that Petitioner had not properly

Case 1:21-cv-00485-PLM-PJG   ECF No. 20,  PageID.1277   Filed 05/09/23   Page 12 of 21

preserved his challenge to the replacement juror on the basis that he was not present during that

portion of the trial. *Id.* at *5. The court of appeals went on to reject Petitioner's challenge on the

merits, stating:

> In any event, although the record is unclear whether [Petitioner] was present when
> the juror replacement procedures were initially discussed and the waiver occurred,
> it is clear that [Petitioner] was present when the court reconvened shortly thereafter.
> And, even assuming that [Petitioner] was initially absent when the juror
> replacement procedures were discussed and the waiver occurred, he has not
> established that the replacement of a juror required his presence and personal
> waiver. We have never indicated that anything more than the defense counsel's
> express approval was required to sufficiently personally waive the juror
> replacement. See [*People v. ]Tate*, 244 Mich. App. [553,] 559 [(2001)]. And, as to
> [Petitioner's] alleged absence, "[a] defendant has a right to be present during . . .
> any . . . stage of trial where the defendant's substantial rights might be adversely
> affected," including "the voir dire, [and] selection of and subsequent challenges to
> the jury . . . ." *People v. Mallory*, 421 Mich. 229, 247; 365 N.W.2d 673 (1984); see
> also MCL 768.3. However, the "test for whether defendant's absence from a part
> of his trial requires reversal of his conviction is whether there was any reasonable
> possibility that defendant was prejudiced by his absence." *People v. Buie*, 298
> Mich. App. 50, 59; 825 N.W.2d 361 (2012) (quotation marks omitted). "It is
> possible that defendant's absence made no difference in the result reached." *People
> v. Morgan*, 400 Mich. 527, 536; 255 N.W.2d 603 (1977) (quotation marks omitted).
> In this case, [Petitioner], if absent, was only absent for a short period and he was
> present for the remainder of trial. See *Buie*, 298 Mich. App. at 60. Also, [Petitioner]
> fails to explain how his presence would have altered the juror replacement
> procedure. See *id.* ("There is no evidence in the record to support a finding that
> there was any reasonable possibility that defendant was prejudiced by this short
> absence." (quotation marks omitted)).

*Guy*, 2019 WL 6977837, at *5.

Again, to the extent that Petitioner asserts that the state courts erred under Michigan law,

he fails to state a claim upon which habeas relief may be granted. *See Lewis*, 497 U.S. at 780.

Moreover, with respect to the juror-substitution process itself, "[t]he Supreme Court has never

'specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations

have begun.'" *Gordon v. Woods*, No. 16-2446, 2018 WL 746526, at *2 (6th Cir. Feb. 7, 2018)

(order) (quoting *Claudio v. Snyder*, 68 F.3d 1573, 1575 (3d Cir. 1995)). Thus, Petitioner has not

demonstrated that the court of appeals' rejection of his challenge to the juror replacement process itself is contrary to, or an unreasonable application of, clearly established federal law.

With respect to Petitioner's argument that he was not present when the juror was dismissed and replaced with one of the alternate jurors, the Court recognizes that defendants have a due process right "to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). This right encompasses situations where "a fair and just hearing would be thwarted" by the defendant's absence. *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)). However, the right "exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005)). A defendant's "privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Stincer*, 482 U.S. at 745 (quoting *Snyder*, 291 U.S. at 106–07). Here, Petitioner merely relies upon his appellate brief to support his argument, but he did not offer anything in that brief to suggest that he "could have done anything had he been [present for the juror replacement discussion or that he] would have gained anything by attending." *Id.* at 747 (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985)). Thus, Petitioner has not demonstrated that the court of appeals' determination that Petitioner's due process rights were not violated when he was allegedly not present during the replacement process is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

13

### C.      Ground III—Ineffective Assistance of Counsel

Petitioner next contends that his Sixth Amendment rights were violated because trial counsel "failed to investigate records from the Department of Health and Human Services that would corroborate [Petitioner's] assertion that Rashedia Pastor was paid for daycare services for Patricia Green until 2012." (Pet., ECF No. 1-1, PageID.18.) Petitioner suggests these records would have shown that he "was never alone with [the victim] such that Ms. Pastor would have known if anything happened between himself and [the victim]." (*Id.*, PageID.41.) Petitioner argues that these records could have been used to impeach the victim, who "claimed that [Petitioner] sexually assaulted her almost every day during the time that Rashedia Pastor provided daycare" services. (*Id.*, PageID.42.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

14

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . " (citing *Harrington*, 562 U.S. at 102)).

The court of appeals cited to state law that expressly cites to *Strickland* to reject Petitioner's ineffective assistance claim. *Guy*, 2019 WL 6977837, at *6. Specifically, the court of appeals concluded:

> [Petitioner] fails to meet either prong. First, defense counsel's performance did not fall below an objective standard of reasonableness. It is true that "[a] sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v. Grant*, 470 Mich. 477, 486; 684 N.W.2d 686 (2004). Assuming that evidence of the daycare provider's hours exists, defense counsel was not ineffective in failing to pursue it. Defense counsel stated on the record that he believed this evidence was irrelevant in light of the circumstances of the case. Defense counsel is only required to pursue "leads relevant to the merits of the case." *Grant*, 470 Mich. at 487 (quotation marks omitted). As we grant deference to defense counsel's choice of trial strategy, we

conclude that it is likely that defense counsel was concerned that the largely irrelevant evidence of daycare scheduling would distract from other, more substantive inconsistencies in the prosecution's case. In light of counsel's reasonable strategic choice, he was not ineffective.

Second, even if defense counsel's performance had been deficient, [Petitioner] cannot demonstrate prejudice. In this case, the sexual abuse occurred over the course of five years. The victim's mother was often at work during both daytime and nighttime hours. Testimony showed that [Petitioner] stayed at home to care for the children while their mother was gone. Therefore, there was overwhelming evidence that [Petitioner] was present and alone with the victim for large portions of the relevant time frame. In contrast, this evidence of the daycare worker's alleged presence at the home on a temporary basis would not have significantly mitigated [Petitioner's] opportunity to sexually assault the victim. The trial testimony established that the daycare worker would only stay in the home on a partial basis and left for long periods. Evidence of this alleged daycare, even if in existence, does not "undermine confidence in the outcome." [*People v.* ]*Randolph*, 502 Mich. [1,] 9 [(2018)] (quotation marks omitted). We conclude that defense counsel was not ineffective, and that there is no need for an evidentiary hearing because the existence of these records would not demonstrate counsel's ineffectiveness.

*Guy*, 2019 WL 6977837, at *6.

Petitioner raised his concern about the daycare records prior to jury selection. (Trial Tr. I, ECF No. 9-4, PageID.280.) Counsel subsequently informed the court that Petitioner had mentioned the daycare to him several times. (*Id.*, PageID.281.) Counsel explained that Petitioner was concerned with impeaching the victim's mother, not the victim, with the records, and that counsel did not think the records were "particularly relevant under the circumstances." (*Id.*, PageID.281–282.) Moreover, the record reflects that counsel cross-examined the victim regarding Ms. Pastor's presence in the home during the relevant time, and that the victim testified that Ms. Pastor was "always in and out" and "was only there for the nighttime." (*Id.*, PageID.455.) The victim also testified that Ms. Pastor "stayed during the day while [the older children] were at school to help [Petitioner] watch [her] little sister," but that Ms. Pastor would leave once the older children were home from school. (*Id.*, PageID.456.) Counsel also cross-examined the victim's mother regarding Ms. Pastor's presence in the home during the relevant time. (Trial Tr. III, ECF No. 9-6,

PageID.788.) The victim's mother testified that Ms. Pastor would "come home at night time and sleep" but would "hang out with people in the neighborhood" during the day. (*Id.*, PageID.789.) The victim's mother corroborated the victim's testimony that Ms. Pastor was gone "most of the time." (*Id.*)

Petitioner entirely fails to explain how the court of appeals' analysis is contrary to, or an unreasonable application of, *Strickland*. Indeed, he simply presents the same argument to this Court that he presented to the Michigan Court of Appeals. He offers no ground to overcome the deference this Court must give to the court of appeals' resolution of this ineffective assistance claim. Petitioner, therefore, is not entitled to relief on habeas ground III.

### D.    Ground IV—Late Endorsement of Witness

As his final ground for relief, Petitioner contends that the trial court erred in allowing the late endorsement of a witness, Janae Bosher. (Pet., ECF No. 1-1, PageID.18.) Petitioner avers that Bosher, the victim's best friend, was a critical witness because the victim "allegedly disclosed sexual assaults to [Bosher] before she disclosed them to her mother." (*Id.*, PageID.45.) Petitioner contends that Bosher's testimony "could well have determined the outcome of the case since there was no physical evidence to corroborate [the victim's] testimony." (*Id.*)

Prior to jury selection, the prosecution moved for Bosher to be endorsed as a witness. (Trial Tr. I, ECF No. 9-4, PageID.273.) Petitioner's counsel objected, noting that Bosher "was not on the Complaint, she was not on the Information, she was not on the witness list at any time. There was a mention of her being interviewed in one of the police reports and that was the extent of it." (*Id.*, PageID.274.) Counsel argued that adding Bosher as a witness at the last minute "changes the entire way [he and Petitioner would] approach this trial." (*Id.*) Counsel noted that Bosher was "potentially a seminal witness that had never been brought forth" and had only been located the day before trial. (*Id.*)

17

The prosecution countered that a statement by Bosher had been included in the police report, which was "turned over to defense several months ago." (*Id.*, PageID.275.) An investigator had been trying to locate Bosher for months. (*Id.*) The prosecutor indicated that it was not his first time "discussing this witness" with Petitioner's counsel, and that he had indicated to Petitioner's counsel the week before trial "that [they] were still looking for" Bosher. (*Id.*, PageID.276.) Counsel, however, did not recall that conversation. (*Id.*)

The trial court granted the motion to endorse, but directed that the prosecution "[could not] mention the name nor the testimony in voir dire or opening statement pending [Petitioner's counsel's] opportunity to interview the witness." (*Id.*, PageID.276–277.) The trial court took "the prosecutor at their word that they've made attempts throughout the pendency of this case to try to locate this person and inform the defense." (*Id.*, PageID.277.) The trial court noted, however, that Petitioner was "entitled to at least have some time to interview" Bosher before she testified. (*Id.*)

The court of appeals applied state law to reject Petitioner's claim, concluding that the trial court did not abuse its discretion in choosing "to credit the prosecutor's explanation for why it failed to provide notice until the first day of trial." *Guy*, 2019 WL 6977837, at *8. The court of appeals also noted that "the trial court placed limitations on the prosecutor and afforded defense counsel an opportunity to interview the witness and renew his objection in order to limit any prejudice to [Petitioner]." *Id.* Given those limitations, the court of appeals concluded that the "circumstances of [Petitioner's] case [were] almost identical to previous instances when [they had] upheld a trial court's late endorsement of a witness." *Id.*

It is well settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with the aid of surprise testimony from an accomplice who was an undercover

18

agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (citing *Weatherford*, 429

U.S. at 559). A decision regarding the endorsement of a witness generally constitutes a state law

matter within the trial court's discretion. *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich.

1999) (citing cases); *Whalen v. Johnson*, 438 F. Supp. 1198, 1202–03 (E.D. Mich. 1977) (holding

that it was not a fundamental error to permit a prosecutor to endorse a witness during trial even

though the prosecutor had previously filed an affidavit stating that the witness was not material).

A claim that a trial court erred in the application of state procedure or evidentiary law is not in

itself a cognizable ground for federal habeas relief. *See Estelle*, 502 U.S. 62, 67–68; *Serra v. Mich.

Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir.1993). Thus, the court of appeals' conclusion that the

late endorsement of Bosher by the prosecution was appropriate under state law is axiomatically

correct.

      Habeas relief may be available, however, if an evidentiary ruling "results in a denial of

fundamental fairness" that violates due process. *See Bugh*, 329 F.3d at 512. Petitioner, however,

has not established that the late endorsement of Bosher resulted in a due process violation because

there is no indication that the late endorsement of Bosher meaningfully prejudiced Petitioner or

rendered his trial fundamentally unfair. The trial court gave Petitioner's counsel the opportunity

to interview Bosher before she testified. (Trial Tr. I, ECF No. 9-4, PageID.276–277.) The record

indicates that Petitioner's counsel did talk to Bosher before she testified. (Trial Tr. II, ECF No. 9-

5, PageID.695.) Bosher's testimony was presented to corroborate testimony given by the victim,

and the record reflects that counsel thoroughly cross-examined Bosher during trial. (*Id.*,

PageID.695–715.); *see Mayes v. Gibson*, 210 F.3d 1284, 1292 (10th Cir. 2000) (holding that the

late endorsement of a prosecution witness did not prejudice the defendant because defense counsel

conducted an adequate cross-examination and had a meaningful opportunity to explain the

evidence offered). Petitioner has failed to demonstrate that the court of appeals' rejection of his claim regarding the late endorsement of Bosher is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.


Dated:   <u>May 9, 2023</u>                    <u>/s/ Paul L. Maloney</u>
                                         Paul L. Maloney
                                         United States District Judge

21